EDP:ADW
F. #2019R00718/OCDETF #NY-NYE-785

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                  Case No. 19-CR-226 (ERK)

CARLOS ALBERTO MANTUANO
HOLGUIN,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


THE GOVERNMENT'S DETENTION MEMORANDUM


                                                          BREON PEACE
                                                          UNITED STATES ATTORNEY
                                                          Eastern District of New York
                                                          271 Cadman Plaza East
                                                          Brooklyn, New York 11201


Andrew D. Wang
Assistant United States Attorney
(Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum in support of its application for a permanent order of detention for the defendant Carlos Alberto Mantuano Holguin ("Mantuano Holguin"), an Ecuadorian national who conspired with others to traffic large amounts of cocaine from Colombia to the United States. Mantuano Holguin was arrested by Panamanian authorities on April 20, 2023. He was extradited from Panama to the United States on May 17, 2023 and is scheduled to appear before the Court this afternoon for an arraignment on the indictment in this case. For the reasons set forth below, at his arraignment, the Court should enter a permanent order of detention, as no condition or combination of conditions can assure Mantuano Holguin's appearance at trial.

STATEMENT OF FACTS

I.      The Defendant's Cocaine Trafficking Conduct[1]

The defendant is an Ecuadorian national who worked with Colombian drug trafficking organizations ("DTOs") to transport large amounts of cocaine via "go-fast vessels" ("GFVs") through the Pacific Ocean. Such GFVs typically carried several hundred kilograms of cocaine at a time. After being loaded with cocaine in Colombia, the GFVs would travel to Guatemala or other Central American countries. Upon successfully arriving in such countries, co-conspirators took possession of the cocaine and transported it by land into Mexico. Co-conspirators then usually sold the cocaine to Mexican DTOs, who would invariably smuggle the cocaine into the United States to be sold.

The defendant specialized in refueling the GFVs as they traveled over the high seas. To do this, the defendant hired Ecuadorian boat crews, who would carry fuel on their vessels. After receiving coordinates from Colombian co-conspirators, the defendant would then direct the boat crews to meet cocaine-laden GFVs at specific transit points on the open water, where the crews would refuel the GFVs. The defendant was also directly involved in the planning of specific cocaine shipments, either through phone calls or in-person meetings with senior members of the Colombian DTOs who owned the cocaine.

The evidence in this case includes, among other things, lawfully intercepted communications, witness testimony, seizures of drugs, and photographs. Based on such evidence,

---

[1] As permitted by the Second Circuit, the government proceeds by factual proffer in support of its motion for a permanent order of detention. See United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000); United States v. Ferranti, 66 F. 3d 540, 542 (2d Cir. 1995). As this proffer seeks only to articulate facts sufficient to justify detention, it is not a complete statement of all the evidence of which the government is aware or which it will seek to introduce at trial.

3

the government estimates that the defendant was responsible for trafficking thousands of kilograms of cocaine during the course of the charged conspiracy.

II.     Foreign Authorities' Arrest and Extradition of Mantuano Holguin

On May 16, 2019, a grand jury sitting in the Eastern District of New York returned the Indictment. Counts One and Two charge Mantuano Holguin with conspiracy and distribution of cocaine internationally, intending, knowing, and having reasonable cause to believe that the cocaine would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 959(d), 960(a)(3), 960(b)(1)(B)(ii), and 963. Both counts carry a statutory maximum of life imprisonment and a mandatory minimum of 10 years' imprisonment.

On April 20, 2023, Panamanian law enforcement authorities arrested Mantuano Holguin in Panama. Following extradition proceedings based on the indictment, Mantuano Holguin was extradited from Panama and arrived in the Eastern District of New York on May 17, 2023.

ARGUMENT

I.     Legal Standards

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., a federal court must order a defendant detained pending trial where it determines that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A presumption of dangerousness and risk of flight arises when a defendant is charged with an offense under the Controlled Substances Act or the Controlled Substances Import and Export Act that carries a maximum term of imprisonment of 10 years or more and the Court finds probable cause to believe that the defendant committed such offense. 18 U.S.C. § 3142(e)(3)(A). Probable cause may be established by the

sheer fact that a grand jury has returned an indictment charging the defendant with the offense in question. See United States v. Contreras, 776 F.2d 51, 54–55 (2d Cir. 1985).

The presumption means that the Court must initially assume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3124(e)(3). The defendant may rebut this presumption by coming "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If this burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant presents a risk of flight. See 18 U.S.C. § 3142(f); Mercedes, 254 F.3d at 436; United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). Indeed—and significantly—danger to the community includes "the harm to society caused by [the likelihood of continued] narcotics trafficking." United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985). In considering risk of flight, courts have found that where the evidence of guilt is strong, it provides "a considerable incentive to flee," United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993), as does the possibility of a severe sentence, see Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses with significant maximum terms had potent incentives to flee); see also United States v. Cisneros, 328 F.3d 610,

5

618 (10th Cir. 2003) (defendant was flight risk because her knowledge of seriousness of charges against her gave her strong incentive to abscond to Mexico).

Courts consider several factors in making the determination of whether pretrial detention is appropriate: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. See 18 U.S.C. § 3142(g). Even where the defendant has met his burden of production to rebut the statutory presumption in favor of detention, the presumption also remains a factor for the Court to consider. Mercedes, 254 F.3d at 436.

II.     A Presumption of Detention Applies

This case involves offenses for which there is a presumption that no condition or combination of conditions will reasonably assure Mantuano Holguin's appearance or the safety of the community. See 18 U.S.C. § 3142(e)(3). Specifically, because Mantuano Holguin is charged with multiple counts under the Controlled Substances Act and the Controlled Substances Import and Export Act for which the maximum term of imprisonment is life, he is presumed to pose a danger to the community and a risk of flight. Accordingly, Mantuano Holguin bears the initial burden of showing that he is not a danger to the community or a flight risk. For the reasons set forth below, Mantuano Holguin cannot sustain that burden.

III.    Mantuano Holguin Poses a Significant Risk of Flight

Mantuano Holguin cannot overcome the presumption that he is a risk of flight, for several reasons.

First, if convicted of either Count One or Count Two, he faces a mandatory minimum sentence of 10 years' imprisonment. These counts also carry a statutory maximum of life imprisonment. Given the significant jail time Mantuano Holguin faces upon conviction, he has a strong incentive to flee the jurisdiction. See <u>Jackson</u>, 823 F.2d at 7 (prospect of severe sentence creates incentive to flee); <u>Martir</u>, 782 F.2d at 1147 (charges with significant maximum terms created potent incentive to flee); <u>Cisneros</u>, 328 F.3d at 618 (seriousness of charges gave defendant strong incentive to abscond).

Second, Mantuano Holguin's personal history and characteristics demonstrate that he is a significant flight risk. Mantuano Holguin has no known personal ties to the United States and has been brought to the United States for the sole purpose of facing criminal prosecution. He has no legal status in this country. In addition, should Mantuano Holguin be released on bail and then flee the country, he will almost certainly return to and seek safe haven in Ecuador, which does not extradite its own nationals. Given his absence of any connection to the United States (aside from his drug trafficking activities) and his extensive ties to Ecuador, Mantuano Holguin constitutes a significant risk of flight.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court order the defendant to be detained permanently pending trial, as there is no condition or combination of conditions that could reasonably assure the defendant's appearance at trial.

Dated: Brooklyn, New York
       May 18, 2023

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By:    /s/
     Andrew D. Wang
     Assistant U.S. Attorney
     (718) 254-6311